ALLSTATE INSURANCE COMPANY,
Plaintiff-Appellant,

v.

Roger Eugene GREEN; Kevin Dion Green; Frank Prince Middlebrooks, Jr.; Frank Middlebrooks; Irene Middlebrooks; Sheldon Murray; Herbert Murray and Wilma Murray, Defendants-Appellees.

No. 86-1729.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1987.

Decided Aug. 6, 1987.

Rosalind Rochkind (argued) Garan, Lucow, Miller, Seward, Cooper & Becker, P.C., Detroit, Mich., Frederick B. Plumb, for plaintiff-appellant.

O'Neal O. Wright, Wright, Fabré, Reed, and Whitfield, Michael Marston (argued), Detroit, Mich., for defendants-appellees.

Before GUY and BOGGS, Circuit Judges; and EDWARDS, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Allstate Insurance Company (Allstate), commenced this action for declaratory relief in federal district court. Allstate sought a determination that its homeowners policy of insurance issued to Frank and Irene Middlebrooks as the named insureds, and also insuring their seventeen year old son, Frank Prince Middlebrooks, Jr. (Frank, Jr.), provided no coverage for the Middlebrooks in a pending state court action. The district judge, *sua sponte*, dismissed the action for lack of jurisdiction, stating as follows:

This being an action for declaratory judgment as to which there is a parallel action arising from the same facts pending in state court;

The Court determin[es] on the authority of *American Home Assurance Company v. Evans* ... and *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Insurance Co.* ... that a declaratory judgment is inappropriate in this action.

For the reasons which follow, the judgment of dismissal is reversed and remanded for further proceedings in accordance with this opinion.

## I.

The facts relative to this appeal are largely uncontested and may be summarized as follows. The declaratory action arose as a result of claims made against Allstate's insureds concerning an assault

and battery committed against Kevin Green, a seventeen year old high school student, by Frank, Jr. and his friend, Sheldon Murray. Middlebrooks and Murray attempted to rob Green at gunpoint and, when Green attempted to run away, Frank, Jr. fired a "volley of shots," one of which hit Green in the right hip. Murray was criminally charged and found guilty in a bench trial on February 27, 1985. On March 29, 1985, a guilty plea was accepted from Frank, Jr. by the Detroit Recorder's Court to assault with intent to do great bodily harm, assault with intent to rob being armed, and felony firearm.

At the time of the incident, Frank, Jr. lived with his parents, the named insureds on the homeowners policy at issue. A tort complaint was filed in Wayne County Circuit Court on June 13, 1985, charging Frank and Irene Middlebrooks and Herbert and Wilma Murray with negligence in (1) allowing the guns to become accessible to the boys; (2) failing to exercise proper control of the use of the gun(s); and (3) failing to exercise proper control over the actions of their children, being "well aware that the children were likely to resort to violence and that they were potentially dangerous to various segearents (sic) of society." The Middlebrooks tendered the defense of the tort complaint to Allstate and demanded coverage under the family liability provisions of the policy. It was Allstate's belief, communicated to the Middlebrooks in a reservation of rights letter, that the policy did not cover their potential liability because of the following exclusion:

*Exclusions—Losses We Do Not Cover*
1. We do not cover any bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

However, Allstate accepted the defense of the tort suit under a reservation of

rights, pending a judicial determination of the coverage issue. In an attempt to secure such judicial determination, Allstate commenced this declaratory action pursuant to 28 U.S.C. § 2201[1] on October 17, 1985. Diversity jurisdiction was properly invoked, and Allstate sought a declaration that it had neither the duty to defend the Middlebrooks nor the duty to indemnify them for any liability which might arise in the tort suit.[2] Allstate named as defendants all parties who might have an interest in the outcome of the coverage issue, including the insureds (Middlebrooks), the tort plaintiffs (Greens), and the co-tort defendants (Murrays).

On June 17, 1986, Allstate filed a motion for summary judgment, alleging a lack of any genuine issue of material fact. All parties agreed that Frank, Jr. had attempted to rob Green at gunpoint and that he had fired the weapon in Green's direction when Green attempted to flee. All agreed that one of the bullets hit Green. It was Allstate's position that, based on these undisputed facts, the allegations directed against the Middlebrooks fell within the policy exclusion as a matter of law. Defendants Green (the tort plaintiffs) filed a response requesting that the court find that Allstate had both a duty to defend and the duty to indemnify. Prior to hearing argument on the motion, the district court *sua sponte* dismissed the claim for lack of jurisdiction. A jurisdictional issue had not been raised previously nor were the parties afforded an opportunity to respond prior to the issuance of the court's order.

## II.

In *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir.1984), we dealt with a declaratory judgment action filed by the plaintiff in

1. § 2201. *Creation of Remedy.*
   (a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration

shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. The underlying tort suit continues to proceed with defense counsel retained by Allstate on behalf of the Middlebrooks.

federal court following a dismissal on the same issue by a state court. Plaintiff failed to appeal the state court ruling, instead filing its 28 U.S.C. § 2201 federal action almost one and one-half years later. We declined declaratory relief, finding that "Grand Trunk's request for declaratory relief is an attempt to have the federal courts do what the state court has already refused to do. As such, Grand Trunk's request for declaratory relief is not only an impermissible attempt to race with Conrail to obtain a favorable final judgment, but also will create unnecessary friction between federal and state courts." *Id.* at 326. In *Grand Trunk*, we adopted the following general considerations governing the grant of declaratory judgments:

> (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

*Id.* (citing E. Borchard, *Declaratory Judgments 299* (2d ed. 1941)). We further refined those considerations into an analytical framework encompassing the following five factors: (1) whether the declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Id.*

On May 27, 1986, we issued the two decisions upon which the district court relied in dismissing the present action. In *American Home Assurance Co. v. Evans*, 791 F.2d 61 (6th Cir.1986), plaintiff-insurer filed a § 2201 action shortly before the commencement of trial in state court and after an eight-month adjournment due to substitution of counsel. The insured, William Evans, an attorney, had been sued for malpractice and dishonest conduct of a client's affairs. The insurer sought a declaration that Evans' conduct fell within the policy's "dishonesty" exclusion to coverage. Although the initial complaint was filed in state court in July of 1981, the federal § 2201 action was not filed until October of 1982, and the insurer simultaneously petitioned the state court to have the malpractice action stayed pending a determination of the federal coverage action. That motion was denied, and the state suit proceeded to judgment in favor of the plaintiff prior to the district court's consideration of the declaratory action.

The district judge granted declaratory relief; however, we reversed and ordered dismissal because "we saw the case as an effort to play off the state and federal courts against each other and as a race for *res judicata.*" *Id.* at 63. We held in *American Home* that "[w]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available [i.e., an action for indemnity after conclusion of the state court suit], declaratory judgment is inappropriate." *Id.* at 64.

*Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Insurance Co.*, 791 F.2d 460 (6th Cir.1986), involved a § 2201 action filed by a stock brokerage firm against the issuer of its fidelity bonds. Initially, the firm sought a declaration as to both coverage and indemnification in two state court cases alleging various counts of fraud and securities violations. The district court ruled in favor of *Manley, Bennett* on the indemnification issue and also granted the firm's motion to voluntarily dismiss the coverage issue, and the insurer appealed. We ruled that the declaratory judgment was improvidently granted and ordered dismissal. In so holding, we considered two factors to weigh against the exercise of federal jurisdiction; the fact that the coverage question would not be resolved and the existence of a "superior alternative remedy" in the form of an action for indemnity after conclusion of the state trial. Once again we stressed, as we had in *American Home*, that "declaratory

judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court. Such actions ... should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem." *Manley, Bennett,* 791 F.2d at 463.

### III.

The Declaratory Judgment Act has, over the years, provided an extremely useful procedural device for adjudicating disputes concerning insurance:

[A] liability insurer's indemnification agreement carries with it not only an obligation to pay judgments against the insured but also, in the real world, to pay settlement amounts. Indeed, liability insurers owe fiduciary obligations to their insureds with respect to the considerations of settlement offers and the conduct of settlement negotiations. It would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. So viewed, the controversy is then quite proper for a judicial determination now. To delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs. The declaratory judgment relief was intended to avoid precisely the "accrual of avoidable damage to one not certain of his rights." A determination of legal obligations would thus strongly affect present behavior, have present consequences and resolve a present dispute.

*ACandS, Inc. v. Aetna Casualty and Surety Co.,* 666 F.2d 819, 823 (3d Cir.1981) (citations omitted). *See generally* 6A

Moore's Federal Practice ¶ 57.19 (1983). Early § 2201 actions involving insurers were often dismissed on the ground that such actions did not present a justiciable "case or controversy." However, the Supreme Court repudiated this theory in *Aetna Life Insurance Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). In *Haworth,* the Court held that antagonistic assertions regarding liability for benefits were properly encompassed within the Declaratory Judgment Act. The lower courts also envisioned problems in granting declaratory relief involving an injured third party since, normally, no cause of action against the insurance company accrues in favor of such party prior to judgment in the state proceeding. However, it was settled in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510 (1941), that, in a declaratory action brought by an insurance company against the insured and the injured third party for a declaration of non-coverage, the injured third party cannot successfully contend that no "controversy" exists between himself and the insurer. This result undeniably recognizes the fact that, in many cases, the "real dispute is between the injured third party and the insurance company, not between the injured and an often-times impecunious insured." Moore, *supra,* ¶ 57.19 at 57–204.

In *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), the Supreme Court upheld the exercise of federal jurisdiction in § 2201 actions and clarified its scope. In *Meredith,* the Fifth Circuit had held that the district court should not have exercised its diversity jurisdiction to grant equitable and declaratory relief where the case turned upon unresolved issues of state law. The Supreme Court reversed, stating:

The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise

of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.

*Id.* at 234, 64 S.Ct. at 11.

■ Finally, the Supreme Court clarified the question of dismissal of a § 2201 action due to the pendency of a state proceeding in *Brillhart v. Excess Insurance Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In *Brillhart,* the district court had dismissed the declaratory complaint concerning insurance coverage because of the pendency of a state court action without considering whether the § 2201 claims could actually be raised in the state proceedings. The Court found the relevant question to be whether the controversy between the parties to the declaratory action could be fully adjudicated in the pending state action:

> Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* at 495, 62 S.Ct. at 1176. Based on these Supreme Court precedents, it is clear that a district court's grant or denial of declaratory relief must be predicated on an exercise of its discretion after full inquiry into all relevant considerations. It is apparent that the trial judge in the instant case failed to exercise any discretion, but felt himself bound to dismiss based on our decisions in *American Home* and *Manley, Bennett.* Therefore, we must address the issue of whether a per se rule as to declaratory judgment actions relative to insurance coverage was intended by *American Home* and *Manley, Bennett.*

## IV.

Several courts of appeals have considered this issue and have recognized the propriety, absent exceptional circumstances, of entertaining § 2201 actions declaring the rights and liabilities of parties to an insurance contract. *See, e.g., Metropolitan Property & Liability Insurance Co. v. Kirkwood,* 729 F.2d 61 (1st Cir.1984) (district court erred in dismissing insurer's declaratory action due to pendency of state tort proceeding which would not resolve coverage issue); *ACandS,* 666 F.2d 819 (3d Cir.1981) (declaratory judgment relief was intended to avoid precisely the "accrual of avoidable damages to one not certain of his rights" (citation omitted)); *Sears, Roebuck and Co. v. American Mutual Liability Insurance Co.,* 372 F.2d 435 (7th Cir.1967) (question of insured's coverage is independent in issue, if not in factual origin, from question of insured's liability for accident, which is subject of state court proceeding); *Stout v. Grain Dealers Mutual Insurance Co.,* 307 F.2d 521 (4th Cir.1962) (same). Indeed, we ourselves have reinforced the propriety of early resolution of insurance coverage disputes via a § 2201 action. In *American States Insurance Co. v. D'Atri,* 375 F.2d 761 (6th Cir.1967), the district court had dismissed a § 2201 action brought by the insurer, reasoning that the coverage question was "inextricably bound up" with the general question of the insured's liability to the tort plaintiff and, therefore, it would be "impolitic" for the federal court to "resolve the same issues that were then pending and would be resolved in the [state court] action." *Id.* at 763. We reversed in a decision which bears lengthy quotation here:

> There are, however, important differences in the matters presented in the district court and the [state court] proceedings. Whether the insurance company is contractually obligated to defend and protect [its insured] involves considerations that are not relevant to whether

or not [the insured], as a matter of tort law, is liable for the damages incurred by [the tort plaintiff]. Since the [insurer] is not, and could not be, under Ohio law … a party to the state court action, it is powerless under the district court's disposition of the case, presently to ascertain the scope of its liability. It must, consequently, defend a party to whom it does not believe it owes a duty, or assume the risk that that party will go defenseless—or be defended by someone whose interests are adverse to those of the company. In either event, should a judgment be rendered against [its insured], it must expose itself to future suits for collection, or bring another declaratory judgment action, and then assert the same theory it now seeks to have vindicated.

We do not believe that, considering the purposes of the Federal Declaratory Judgment Act, the [insurer] should be forced into a waiting period of legal uncertainty respecting the obligations it has incurred in its policy. We recognize that under the Act a District Judge has discretion in allowing its employment, but we do not think it should have been denied in this case. We have said that a declaration of rights and duties, such as this plaintiff seeks, should not be refused,

> "because of the pendency of another suit if the controversy between the parties will not necessarily be determined in that suit * * * A declaratory judgment proceeding which involves only the extent of the coverage of an insurance policy and not the liability of the insured to the persons injured in the accident, will be entertained in the Federal Court, and the insurer is entitled to have the extent of the coverage of its policy declared in such a proceeding,—other essentials of jurisdiction being present." *Maryland Casualty Co. v. Faulkner*, 126 F.2d 175, 178 (CA6, 1942).

*D'Atri*, 375 F.2d at 763.[3]

◼ Review of these Supreme Court and Sixth Circuit precedents, combined with the general considerations and factors set forth in *Grand Trunk*, indicate that our decisions in *American Home* and *Manley, Bennett* were not intended to preclude totally the availability of § 2201 actions involving insurance coverage questions.[4] In fact, we have since upheld the grant of declaratory relief to an insurer, specifically pointing out that analysis under the factors first enunciated in *Grand Trunk* supported the exercise of federal jurisdiction. *State Farm Fire and Casualty Co. v. Odom*, 799 F.2d 247 and 250 n. 1 (6th Cir.1986). The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue. Further, as in *Odom*, "[w]e have no evidence that [Allstate] has done any more than properly choose the jurisdiction of federal rather than state court, a choice given by Congress." *Id.* at 250 n. 1.[5] Fur-

---

**3.** Michigan law prohibits joinder of an insurer as a party defendant in a state court proceeding. *See* Mich.Comp.Laws § 500.3030 (Mich.Stat. Ann. § 24.13030 (Callaghan 1982)), which provides:

> Sec. 3030. In the original action brought by the injured person, or his or her personal representative in case death results from the accident, as mentioned in section 3006, the insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial.

**4.** In *American Home*, the conduct of the insurer in delaying the filing of its § 2201 action, which created concomitant and unwarranted delay in the state court suit, was necessarily a factor in

dismissing the federal action as "an effort to play off the state and federal courts against each other." In *Manley, Bennett*, we found it significant that the insured had voluntarily dismissed the coverage question from its petition, thereby leaving open the possibility (if not the likelihood) of further proceedings to resolve this issue. Furthermore, the dicta regarding the general inadvisability of entertaining declaratory judgment actions in the face of "an ongoing action in another court" was not essential to our holding in those cases and should not be taken to mandate a bar to such federal actions.

**5.** We observe that, unlike the insurer in *American Home*, Allstate filed its § 2201 action only four months after the state tort suit was initiated.

thermore, the existence of a "parallel" state court proceeding is a question to be determined specifically by the district court; the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state court jurisdiction. The Michigan courts have explicitly held that a finding of negligence in a state tort suit is not *res judicata* in an insurer's subsequent coverage suit alleging exclusion under an intentional acts clause since the insurer was not (and could not have been) a party to the tort suit and had properly preserved its defense by a reservation of rights. *Havens v. Roberts*, 139 Mich.App. 64, 66–67, 360 N.W.2d 183, 184 (1984). Thus, the liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory action.

Finally, we are not convinced that an action for indemnity, instituted only *after* the insurance company has provided a defense which it may not have been obligated to render, is in every case a "superior remedy." This, too, is a determination which is not amenable to a per se rule but must be made only after consideration of the unique facts of each case. In conclusion, since the district court misperceived the reach of *American Home* and *Manley, Bennett,* the case will be remanded to permit that court to assess the propriety of the action pursuant to the general considerations, as well as the five-factor test, we set forth in *Grand Trunk.*

REVERSED and REMANDED.