Garland P. STOUT, Appellant,

v.

GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellee.

No. 8604.

United States Court of Appeals
Fourth Circuit.

Argued June 13, 1962.

Decided Aug. 14, 1962.

David H. Armstrong, Troy, N. C., for appellant.

William D. Caffrey and Perry C. Henson, Greensboro, N. C. (Jordan, Wright, Henson & Nichols, Greensboro, N. C., on the brief), for appellee.

Before SOBELOFF, Chief Judge, BELL, Circuit Judge, and LARKINS, District Judge.

LARKINS, District Judge.

This is a controversy between an insurance carrier and its insured over the former's contractual obligations to defend a tort action pending against the latter in a North Carolina State Court, and to pay any adverse judgment that may be rendered in that proceeding.

The plaintiff-insured Stout instituted this action under North Carolina General Statutes section 1–26 seeking a declaratory judgment holding defendant insurance company liable under a comprehensive dwelling policy issued to the plaintiff by defendant for the defense of the named insured and payment of any recovery secured against insured in a wrongful death action now pending in the State Court. Defendant removed the action to the United States District Court.

The facts underlying the wrongful death suit are thus: The plaintiff Stout is a resident of Greensboro in Guilford County, North Carolina. Prior to June 2, 1958 Stout and his family had been troubled by a "peeping Tom" looking in the bedroom window of a teen-aged daughter. Although Stout had alerted police several times, the prowler always disappeared by the time police arrived on the scene. Stout then set up his own device to warn of the presence of anyone outside his daughter's bedroom window. The device consisted of strings extending from a box inside the house to several points outside the house in the yard and onto an adjacent lot.

On June 2, 1958, at approximately 10:30 P.M. the warning device indicated the presence of someone outside the daughter's window. Stout took his loaded .22 caliber rifle and a flashlight with him as he went outside to investigate. He saw a man at his daughter's window and directed his flashlight beam upon him. The man started to run toward Stout and then changed his course and ran away from him. Stout called out to him to stop. When the man failed to stop, Stout fired a burst from the .22 caliber rifle in the direction of the man and continued firing until the gun was empty, a total of 15 or 16 shots. Two bullets struck the fleeing prowler in the back. The prowler ran a short distance further, collapsed and died before medical aid could reach him.

The deceased was identified as James Athanasiou, a Greek immigrant unable to speak or understand English.

Stout was indicted for murder. At the trial he was permitted to enter a plea of guilty to the offense of manslaughter and received a fine and suspended prison sentence.

Subsequently the administratrix of Athanasiou instituted suit against Stout for wrongful death in the State Court. Stout called upon the defendant Grain Dealers Mutual Insurance Co. to defend the suit under the provisions of the comprehensive dwelling insurance policy wherein plaintiff Stout was the insured and defendant the insurer. Defendant refused to defend the suit on the grounds that the death was intentionally inflicted by the insured and that the policy did not afford coverage for such an occurrence.

The parties agree that they are properly in court and that a declaratory judgment should have been rendered, but they disagree as to the proper scope of that judgment. Stout maintains that the only issues he raised were, first, whether he had complied with the conditions precedent (notice of the occurrence as soon as practicable), and second, whether the company had the obligation to defend the tort action. The insurer contends that the issue of coverage was raised specifically in its answer to the complaint of the insured and that the court did not exceed proper bounds in deciding it. Stout, however, argues that the issue of whether the killing was intentional and hence not covered by the policy was not raised by him, and that in any event that issue should be left to be determined in the tort action.

It is commonly said that the granting of declaratory relief is a matter resting in the judicial discretion of the district court. See Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir., 1937). But it would be difficult to envision a situation calling more clearly for the exercise of this discretion in favor of deciding the issue of coverage of an insurance policy than the instant case. The facts bring this case outside the general rule that a federal court will not entertain a declaratory judgment action when the same issue as that sought to be litigated is then pending in some other court of competent jurisdiction. See Indemnity Ins. Co. of North America v. Schriefer, 142 F.2d 851 (4th Cir., 1944); Maryland Casualty Co. v. Boyle Construction Co., 123 F.2d 558 (4th Cir. 1941). The reason is not difficult to understand. First, since there exists a genuine issue of whether the injury was intentionally or unintentionally inflicted, then until this issue is decided between the insured and the insurer, the company should not be required to defend the state tort action. Indeed it could not do so with propriety or satisfaction or fairness either to itself or the assured. The obvious conflict of interest pointed out by the District Court makes it impossible for the insurance company conscientiously to fulfill the role of defender.[1]

Second, if the company is not required to defend the tort action, it would not be bound by the determination of the "intentional-unintentional" question in the trial of the action in which it cannot participate. As Judge Soper explained in Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 177 F.2d 793, 799–800 (4th Cir. 1949): "To hold otherwise would be to estop the Insurance Company by the acts of parties in a transaction in which it has no concern and over which

---

1. This does not mean that by a mere assertion of a conflict of interest the insurer may excuse itself from its contractual obligation to defend. It means only that, when there is an unresolved dispute as to the existence of this obligation, the insurer is not required to participate in a tort proceeding where the insurer's interest would be to prove a state of facts which would establish or magnify the damaged party's claim against the insured. Simply, the law will recognize the practicalities of the situation. But, if it should be later determined that there is coverage, the insurer would be liable for the cost of the defense independently arranged for by the insured, as well as any judgment against him.

it has no control, and to deprive it of its day in court to show that the transaction is foreign to the contract of insurance." In such circumstances the parties in the instant action would be free to litigate the issue of coverage irrespective of the result of the state action by the administratrix. The only just and expedient solution to a dilemma in which parties to a contract of insurance are caught when a conflict of interest arises between them is to have the issue of coverage decided in an independent suit, not complicated by the presence of the claimant.

Therefore, the present suit serves the dual purpose of determining with finality the company's obligation to defend and its ultimate liability for any judgment rendered against the insured. This was a perfect case for declaratory judgment.

The District Court, after trial without jury, held that the defendant insurance company was not obligated under the terms of the policy to defend any suit brought against plaintiff for damages resulting from the occurrence of June 2, 1958, and defendant was not liable under terms of the policy for payment of damages or judgment arising from the occurrence of June 2, 1958. We concur in the District Court judgment.

On this appeal the plaintiff relied upon two main contentions. First, that the District Court erred in concluding as a matter of law that plaintiff had failed to comply with the notice provisions of the insurance policy; second, that the District Court erred in finding that plaintiff intentionally inflicted the injuries resulting in death of Athanasiou and thus defendant was without obligation to defend plaintiff in the wrongful death action or pay any judgment obtained against plaintiff in the wrongful death action.

Stout relied on the fact that the company denied liability on the coverage ground without mentioning his failure to give notice of the occurrence until he brought the present action for declaratory judgment many months later. He contended below and on appeal that this constitutes a waiver of the notice provision. Because of the disposition we make of the appeal, it becomes unnecessary to pass on this point. Likewise, we do not consider the question of whether Stout notified the company "as soon as practicable," as required by the policy.

The insurance policy in issue here contained the usual provision that the insurer is obligated to defend the insured against all actions brought against him which are covered by the policy "even if such suit is groundless, false or fraudulent." The exclusionary provision of the policy reads: *"This coverage does not apply:*

"(c) to injury, sickness, disease, death or destruction caused intentionally by the or at the direction of the insured."

The District Court's finding of fact that plaintiff-insured did intentionally cause the death of Athanasiou is well supported by the evidence in the record and will not be disturbed.

In respect to the insurer's liability to defend insured in a suit brought against him, the general rule is that the liability to defend is governed by the allegations in the complaint in the suit against insured. Glens Falls Indemnity Co. v. Atlantic Building Corp., 199 F.2d 60 (4th Cir. 1952); Employers Mutual Liability Insurance Co. of Wisconsin v. Hendrix, 199 F.2d 53, 41 A.L.R.2d 424 (4th Cir. 1952).

The facts and circumstances of this action, however, are such as to bring it within the exception set forth in the case of Farm Bureau Mutual Automobile Ins. Co. v. Hammer, 177 F.2d 793 (4th Cir. 1949) rather than the general rule. In that case this court held that where the insured's own conduct took him outside the coverage of the policy, the insurer's duty to defend does not exist if it is not possible for the insurer to defend the insured and at the same time to protect its own interests. To state the holding in terms of the instant case, the defendant could not defend plaintiff-insured in the wrongful death

suit and urge that the death was not intentional while at the same time contend there is no coverage under the policy because death was inflicted intentionally by the insured. There would be a conflict of interests on the part of the insurer that would be impossible to resolve if it were forced to defend insured.

■ The plaintiff-insured here placed himself outside the coverage of the policy by his plea of guilty to manslaughter during the criminal action for the death of Athanasiou. Under North Carolina General Statutes section 14–18 the offense of manslaughter is divided into involuntary manslaughter and voluntary manslaughter. Involuntary manslaughter is the unintentional killing of a person without malice. State v. Honeycutt, 250 N.C. 229, 108 S.E.2d 485 (1959); State v. Satterfield, 198 N.C. 682, 153 S.E. 155 (1930). Voluntary manslaughter is the intentional killing of a person without malice. State v. Baldwin, 152 N.C. 822, 68 S.E. 148 (1910). Thus the plaintiff admitted that the death was intentionally caused and the evidence he presented in this action failed to rebut it. In this action he asserted that he entered such a plea not because of guilt but to avoid the possibility of an active prison sentence. Such an assertion is not sufficient to rebut the effect of his plea of guilty in view of the record.

In view of the foregoing facts, it appears to this court that the defendant-insurer here had ample grounds for its assertion that the occurrence of June 2, 1958 was not within the coverage of the insurance policy issued to plaintiff and that defendant was without obligation to defend plaintiff in the wrongful death action against him arising out of the occurrence of June 2, 1958. Thus, to compel defendant to defend plaintiff would place defendant in an impossible situation, that is, it would urge in defense of the wrongful death suit that plaintiff was free of conduct resulting in negligent or intentional injury while contending at the same time that the policy did not cover occurrence because death was intentionally caused.

The rationale of Farm Bureau Mutual Automobile Insurance Co. v. Hammer, supra, applies to the instant case and compels affirmation of the District Court's judgment that the defendant was not obligated under the terms of the policy of insurance issued to plaintiff Stout to defend the wrongful death action brought against Stout by the administratrix of Athanasiou, or to pay any judgment rendered against Stout arising from the occurrence of June 2, 1958 and we hold that the defendant is not so obligated.

The judgment of the District Court is Affirmed.