COMMERCIAL UNION INSURANCE COMPANY v. SANFORD LEE MAULDIN, COLLECTOR OF THE ESTATE OF KAY MAULDIN PUGH, DECEASED, TOMMY JOE WILMOTH AND BRENDA S. WILMOTH

No..8218SC752

(Filed 7 June 1983)

**Insurance § 149— homeowner's insurance—shooting death—guilty plea to second degree murder—exclusion of coverage**

>      Where the insured shot into a car occupied by his wife and killed the driver thereof, the insured stipulated that he intended to shoot his wife but not the driver, and the insured pled guilty to second degree murder of the driver, the insured's shooting of the driver was excluded from coverage under a homeowner's policy by a provision that the policy did not apply. "to bodily injury or property damage which is either expected or intended from the standpoint of the insured" since (1) the insured's guilty plea to second degree murder of the driver was an admission that he had the general intent to do the act which caused the driver's death, and (2) the likelihood of one of the bullets hitting the driver should have been expected by the insured.

>      Judge BECTON concurring.

APPEAL by defendant from *Helms, Judge.* Judgment entered 13 May 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 16 May 1983.

Plaintiff filed this declaratory judgment action to determine whether its policy provided coverage for Tommy Joe Wilmoth in connection with a shooting incident that occurred on 6 April 1978. In his deposition, Wilmoth testified that he and his wife, Brenda Wilmoth, were married in November 1976. They had marital problems, and Brenda would often go away from the house for several days. She spent a lot of time with her close friend, Kay Mauldin Pugh. The plaintiff and defendant Mauldin stipulated to the following facts only for the purpose of plaintiff's motion for summary judgment. On 6 April 1978, Pugh and Brenda Wilmoth drove in Pugh's car to the drive-in window at Cleaner World to deliver some clothes. Wilmoth pulled up beside Pugh's car and began talking and then arguing with Brenda Wilmoth. He pulled out a .38 caliber pistol and fired four or five shots into Pugh's car as it sped out of the parking lot. The shots killed Pugh and injured Brenda Wilmoth and a Cleaner World attendant. Wilmoth stipulated that he intended to shoot and injure his wife, but he did not have a specific intent to shoot and injure Pugh.

On 6 April 1978, Wilmoth was an insured under plaintiff's homeowner's policy No. CZ-S259175. The policy included the following provisions.

(1) The exclusion section of the policy provides that: *This policy does not apply.*

. . .

   (f) *to bodily injury or property damage which is either expected or intended from the standpoint of the insured.* (Emphasis added.)

(2) The coverage section of the policy provides that: Coverage E — Personal Liability

   This Company agrees to pay on behalf of the Insured all sums to which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient.

(3) The definitions section of the policy provides that: *"occurrence"*: means an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage.

Wilmoth pled guilty to the second degree murder of Pugh and to assault with a deadly weapon with intent to kill Brenda Wilmoth. He was sentenced to eighty years' imprisonment for second degree murder and twenty years' imprisonment for assault.

On 3 April 1980, Sanford Lee Mauldin, collector of the estate of Kay Mauldin Pugh, filed a wrongful death action against Wilmoth. Plaintiff filed this declaratory judgment action seeking a declaration that its policy did not provide coverage for Wilmoth in connection with the events that occurred in the shooting inci-

dent on 6 April 1977, and filed a motion for summary judgment. The court granted plaintiff's motion for summary judgment.

*Smith, Moore, Smith, Schell and Hunter, by Bynum M. Hunter and Alan W. Duncan, for plaintiff appellee.*

*Nichols, Caffrey, Hill, Evans and Murrelle, by G. Marlin Evans and R. Thompson Wright, for defendant appellant.*

VAUGHN, Chief Judge.

The sole issue is whether the trial court erred in finding that Wilmoth was not covered by the homeowner's policy for the claims asserted by Sanford Lee Mauldin. An insurance policy is a contract between the parties and is to be construed and enforced in accordance with its terms. *Allstate Insurance Co. v. Shelby Mutual Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436 (1967). "[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Woods v. Nationwide Mutual Insurance Co.*, 295 N.C. 500, 506, 246 S.E. 2d 773, 777 (1978). There is no ambiguity in the sentence "[This policy does not apply] to bodily injury or property damage which is either expected or intended from the standpoint of the insured." The sentence obviously means that the policy is excluding from coverage bodily injury caused by the insured's intentional acts, determining whether the act is intentional from the insured's point of view.

A similar clause in an insurance policy was interpreted by the Fourth Circuit in *Stout v. Grain Dealers Mutual Insurance Co.*, 307 F. 2d 521 (4th Cir. 1962). In *Stout,* the policy stated: *"This coverage does not apply*: (c) to injury, sickness, disease, death or destruction caused intentionally by the or at the direction of the insured." The insured had shot and killed a "peeping Tom" who was looking into his daughter's window. He was indicted for murder and pled guilty to voluntary manslaughter. Subsequently, the administratrix of the deceased's estate brought a wrongful death action against the insured. The insurer refused to defend the suit on the grounds that the death was intentionally inflicted and thus not covered by the policy. The Fourth Circuit agreed, holding that the insured's acts took him outside the coverage of

the policy because the insured admitted he intentionally caused decedent's death when he pled guilty to voluntary manslaughter.

In this case, Wilmoth stipulated that he intended to shoot his wife but not Pugh. He pled guilty to second degree murder of Pugh. As in *Stout*, Wilmoth's guilty plea to second degree murder removed him from coverage under the policy. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980). In discussing the element of intent in second degree murder, our Supreme Court said:

> While an intent to kill is not a necessary element of second degree murder, the crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death. [Citations omitted] . . . [A]ny act evidencing "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person" is sufficient to supply the malice necessary for second degree murder. *Such an act will always be accompanied by the general intent to do the act itself* but it need not be accompanied by a specific intent to accomplish any particular purpose or do any particular thing. (Emphasis added.)

*State v. Wilkerson*, 295 N.C. 559, 580-581, 247 S.E. 2d 905, 917 (1978). Wilmoth's guilty plea to second degree murder was an admission that he had the general intent to do the act, and it excluded him from coverage under the insurance policy.

Additionally, the likelihood of one of the bullets hitting Pugh should have been expected by Wilmoth. To expect is to anticipate that something is probable or certain, Webster's Seventh New Collegiate Dictionary (1969), and Wilmoth obviously knew it was probable that he would hit Pugh when he fired four or five shots into her moving car.

As there is no issue of fact and, for the reasons stated above, plaintiff was entitled to judgment as a matter of law, the trial court's entry of summary judgment is

Affirmed.

Judge HILL concurs.

Judge BECTON concurs and files a concurring opinion.

Judge BECTON concurring.

I am not convinced that Tommy Wilmoth's guilty plea to the second degree murder of Kay Pugh is conclusive evidence of his intent to inflict bodily injury on Kay Pugh so as to exclude coverage under plaintiff's homeowner's policy No. CZS-295175. Although it is true that a guilty plea in a criminal action may properly be admitted into evidence in a related civil proceeding as an admission against interest, such a plea is not, in my view, determinative of the ultimate factual question in a civil suit. Experienced members of both the bench and bar are aware that pleas are entered for many different reasons. The most common is the most pragmatic: the sobering realization that in many criminal cases a plea of not guilty is a game of chance. The defendant has no control over the dice, and the stakes comprise his freedom.

However, as the majority points out (ante p. 5), that one or both occupants of the car would be severely wounded or killed when Wilmoth wildly and repeatedly fired his .38 into the car should have been expected. Since the policy exempts from coverage *expected* injuries, Commercial Union was within its rights to deny coverage to Wilmoth.

Accordingly, although the more appropriate *ratio decidendi* is, in my view, the "expected" consequence policy exclusion, I nevertheless concur in the result reached by the majority.