NATIONWIDE MUTUAL INSURANCE COMPANY, PLAINTIFF v. ROBERT WILLIS ABERNETHY, JEAN ABERNETHY, AND WILLIAM D. LOWERY, JR., DEFENDANTS

No. 9329SC407

(Filed 19 July 1994)

**Insurance § 725 (NCI4th)— sexual abuse of child—"expected" injuries—no personal liability coverage under homeowner's policy**

Defendant homeowner's deeds and subsequent admission that he willfully sexually abused a music student in his home established that, at the very least, the child's injuries were "expected" by the homeowner as that term was used in his homeowner's insurance policy which excluded personal liability coverage for bodily injury "which is expected or intended by the insured."

**Am Jur 2d, Insurance §§ 475 et seq., 1504 et seq.**

**Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured. 31 ALR4th 957.**

Appeal by plaintiff from partial summary judgment entered 17 February 1993 by Judge Zoro J. Guice, Jr. in McDowell County Superior Court. Heard in the Court of Appeals 2 February 1994.

*Baucom, Claytor, Benton, Morgan, Wood & White, P.A., by Rex C. Morgan and Sharon D. Jumper, for plaintiff-appellant.*

*Edwards & Kirby, by David F. Kirby, for defendant-appellee.*

JOHN, Judge.

Plaintiff Nationwide contends the trial court erred by granting partial summary judgment in favor of defendant Lowery (Lowery). By means of its order, the trial court determined that Lowery's alleged injuries, resulting from acts of defendant Robert Abernethy (Abernethy) committed prior to October 1988, were covered under a homeowner's policy issued by plaintiff to defendants Abernethy. We determine the policy did not provide coverage, and therefore reverse the order of partial summary judgment and remand with instruction that full summary judgment be entered in favor of plaintiff.

The evidence indicates Abernethy was a music teacher. In 1980, he began giving voice lessons to Lowery who was seven (7) years old. Between approximately 1984 and 1991, Abernethy sexually abused Lowery by committing such acts as: touching and fondling Lowery's genitals, masturbating Lowery, and engaging in oral sex. After his actions were discovered, Abernethy was indicted and subsequently pled guilty to Taking Indecent Liberties with Children in violation of N.C.G.S. § 14-202.1 (1986).

On 17 February 1992, Lowery filed suit against Abernethy (the underlying tort action), seeking compensatory and punitive damages based upon Abernethy's acts of sexual molestation. Abernethy thereafter demanded that plaintiff, which insured Abernethy under a homeowner's policy, provide liability coverage for his unlawful acts.

The record indicates plaintiff issued three homeowner's policies to defendants Abernethy during the relevant years of 1984 through 1990. Each carried the same policy number (61MP366-327) and provided standard personal liability coverage for damages "because of **bodily injury** or **property damage**." Each policy also contained the following relevant exclusion from coverage:

1. **Coverage E - Personal Liability** . . . [does] not apply to **bodily injury** or **property damage**:

   a. which is expected or intended by the **insured**

The policy issued in April 1989 contained an additional exclusion for injuries "arising out of sexual molestation . . . ."

On 13 July 1992, Nationwide filed the present declaratory judgment action to determine issues of coverage and defenses prior to trial of the underlying tort action. Defendants Abernethy failed to file an answer. Defendant Lowery answered and requested a declaration that coverage existed for all acts and injuries alleged in his tort complaint.

Both Nationwide and Lowery moved for summary judgment. On 2 February 1993, the trial court entered an order granting partial summary judgment for plaintiff; by means of this order, the trial court determined no coverage existed *after* the "sexual molestation" exclusion was added to the homeowner's policy. On 17 February 1993, the trial court entered a second order which granted partial summary judgment for Lowery; by means of this order, the trial court ruled that coverage existed for those claims arising *before* the "sexual molestation" language was added to the policy. In April 1993, a jury found in favor of Lowery in the underlying tort action and awarded both actual and punitive damages.

---

The sole issue is whether the trial court erred in concluding the Abernethy policy provided insurance coverage for Lowery's injuries. In resolving this question, we need focus only upon the policy as it existed *prior* to the addition of terminology excluding from coverage injuries "arising out of sexual molestation"—no appeal having been taken from the trial court's adjudication of no coverage following insertion of this language. Both parties argue, and we agree, that coverage prior to the "sexual molestation" provision depends upon the *exclusion* for "bodily injury . . . which is expected or intended by the insured." (Emphasis omitted).

We focus first upon "bodily injury." The policy provided liability coverage "because of bodily injury or property damage." (Emphasis omitted). Our review indicates that Lowery's alleged injuries consisted of mental, emotional and psychological harm occasioned by the sexual abuse and his medical expenses incurred in treating this trauma. Because there has been no argument to the contrary, we assume for purposes of our decision that these alleged injuries constitute "bodily injury" within the meaning of the policy.

We therefore examine the remaining phraseology contained in the exclusionary clause, *i.e.*, were Lowery's injuries "*expected or intended by the insured*"? (Emphasis omitted). Lowery correctly argues that the test required by the policy language is generally a sub-

jective one, focusing upon whether the insured intended the resulting injury. *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 703-04, 412 S.E.2d 318, 322 (1992). In that regard, the parties have stipulated that Abernethy would testify he did not intend or expect to cause injury to Lowery when committing the acts of sexual abuse. Lowery contends that under *Stox* this stipulation mandates a conclusion that his injuries are covered under the policy. We disagree with Lowery's interpretation of that decision.

*Stox* concerned an "intended or expected" exclusion identical to the exclusion at issue in the case *sub judice. Stox*, 330 N.C. at 700, 412 S.E.2d at 321. In *Stox*, the insured intentionally pushed the victim causing her to fall and break her arm. *Id.* at 699-700, 412 S.E.2d at 320. The insured testified that he did not intend to injure the victim when he pushed her. Focusing on the word "intended" in the exclusionary clause, the Supreme Court held that the insured's testimony, supported by the testimony of the victim, provided competent evidence to support the trial court's factual finding that the insured did not *intend* to cause bodily injury. *Id.* at 704, 412 S.E.2d at 322-23. In reaching its conclusion, the Court drew a distinction between *Stox* and the situation encountered in *Commercial Union Ins. Co. v. Mauldin*, 62 N.C. App. 461, 303 S.E.2d 214 (1983).

*Commercial Union* also involved the question of whether an exclusion for "expected or intended" injury had application. In *Commercial Union*, the insured was arguing with his wife while she and a female friend were seated in an automobile. The insured became violent, drew a pistol, and fired several shots into the vehicle killing the friend. *Commercial Union*, 62 N.C. App. at 461, 303 S.E.2d at 215. The insured pled guilty to second-degree murder of the friend, yet stipulated that he intended to injure only his wife, *i.e.*, he did not intend to injure the friend. *Id.* at 461, 303 S.E.2d at 215. The victim's estate sought insurance proceeds under the insured's homeowner's policy. The trial court granted summary judgment for the insurance company and this Court affirmed, holding that the victim's death was both "expected" and "intended" within the meaning of the homeowner's policy. *Id.* at 464, 303 S.E.2d at 217.

In *Stox*, the Supreme Court concluded that this Court reached the correct result in *Commercial Union* since the insured in that case:

pled guilty to the second-degree murder of [the friend]. Thus, *he obviously knew it was probable that he would injure* [the friend] when he fired four or five shots into her moving car. . . . Stated

otherwise, through the insured's actions and admissions, the injury to [the friend] was established to have been "intended" within the meaning of that term as used in the insurance policy.

*Stox*, 330 N.C. at 704, 412 S.E.2d at 322 (emphasis added) (citations omitted). We determine that *Commercial Union*, as explained by our Supreme Court in *Stox*, governs the case *sub judice*.

A jury has found that Abernethy's actions caused Lowery to suffer severe mental and emotional trauma. Like the policyholder in *Commercial Union*, Abernethy has asserted he did not "intend or expect" to cause any such injury. However, Abernethy *pled guilty* to the offense of Taking Indecent Liberties with Children in violation of G.S. § 14-202.1. The statute prescribes as an element of the offense that the defendant's acts be "willful." "Willful" has been defined *inter alia* as "done deliberately: not accidental or without purpose: intentional, self-determined." Webster's Third New International Dictionary 2617 (1968). In summary, defendant has admitted he *intentionally* committed acts of *sexual abuse. See State v. Thompson*, 314 N.C. 618, 624, 336 S.E.2d 78, 81 (1985) (a guilty plea is an admission that defendant committed each element of the crime). In light of this acknowledgment, we conclude he "knew it was probable" that Lowery's injuries would ensue and thus "expected or intended" those injuries.

One purpose of our criminal statutes is to protect the public from the harm caused by those acts defined as crimes. *See* 22 C.J.S. *Criminal Law* § 8 (1989). G.S. § 14-202.1 was enacted to protect "children from the sexual advances of adults." *State v. Elam*, 302 N.C. 157, 162, 273 S.E.2d 661, 665 (1981). Legislative recognition of the nexus between an act of child sexual abuse and the harm produced thereby is further demonstrated by the original classification of a violation of the statute as a Class H felony carrying a maximum sentence of ten years, as well as the recent increase in the maximum punishment level to twenty years. *See* G.S. § 14-202.1; N.C.G.S. § 14-1.1 (1993).

In addition, the severe emotional scarring resulting to children from such encounters with sexual predators is apparent both as a matter of common sense and as a matter of law. *See* David P. Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L. Rev. 535, 538-39 (1981). For example, even when Abernethy first began sexually abusing his young music student, it was well documented in popular literature that sexual abuse causes victims far-reaching mental and emotional problems. *See, e.g.,*

Cheryl McCall, *The Cruelest Crime*, LIFE, Dec. 1984, at 35-42; Russell Watson, *The Hidden Epidemic*, NEWSWEEK, 14 May 1984, at 30-36; John Leo, *Someday, I'll Cry My Eyes Out*, TIME, 23 April 1984, at 72-73. Further, numerous jurisdictions have concluded that a policy exclusion for "expected or intended" injuries applies as a matter of law in instances of child sexual abuse even in face of an asserted denial of any intent to cause harm or injury. *See, e.g., Allstate Ins. Co. v. Mugavero*, 589 N.E.2d 365, 369 (N.Y. 1992). (To accept the "semantic argument" that insured who sodomized, raped and otherwise sexually assaulted two minor children over a five year period did not intend to injure the children "would be abhorrent to the legislative policy reflecting the heightened awareness of the serious consequences of child sexual abuse, the need for preventive measures, and the public perception that molesting a child without causing harm is a virtual impossibility."); *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415, 419 (Colo. 1990) (Most jurisdictions, by inferring an intent to injure as a matter of law when an insured has engaged in sexual misconduct with a minor, have in effect "taken judicial notice that some harm inevitably results from sexual assaults on children."); *Perreault v. Maine Bonding and Casualty Co.*, 568 A.2d 1100, 1101 (Me. 1990) (No "factfinder could rationally give any credit" to insured's assertion he neither expected nor intended any injury to the young child as a result of the act which formed the basis for his guilty plea to criminal sexual contact; "[o]n any objective basis, anyone intentionally committing [this offense] is bound to expect that psychological and emotional harm will result," and "[h]arm from the sexual abuse of a child is so highly likely to occur that the intent to commit the act inherently carries with it the intent to cause the resulting injury."); *Whitt v. DeLeu*, 707 F.Supp. 1011, 1016 (W.D. Wis. 1989) ("[S]exual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim" that a molester cannot claim ignorance of such effects; therefore, an insured "who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm."); *Vermont Mutual Insurance Company v. Malcolm*, 517 A.2d 800, 802-803 (N.H. 1986) (Despite denial of insured that he neither "expected" nor "intended" any harm to the young boy, "the assaults were inherently injurious in the most obvious sense," and "[t]his common understanding of the nature of such acts is beyond reasonable dispute and consistent with the legislative classifications of the acts within the . . . serious category of sex offenses.").

Because of the close relationship between an act of child sex abuse and resulting harm to the child, therefore, we conclude as a matter of law that Abernethy "knew it was probable," *Stox*, 330 N.C. at 704, 412 S.E.2d at 322, that his actions would cause Lowery to suffer mental and emotional injury. Stated otherwise, Abernethy's deeds and subsequent admission that he wilfully sexually abused Lowery establish that, at the very least, Lowery's injuries were "expected" by Abernethy as that term is used in the policy. *See Stox*, 330 N.C. at 704, 412 S.E.2d at 322. Thus, as in *Commercial Union*, any testimony by Abernethy to the effect that he did not "expect or intend" to cause such injury is ineffectual—Abernethy cannot by denial circumvent the undeniable.

Although our decision denies Abernethy liability coverage under his homeowner's policy, we are aware it is Lowery who likely will suffer the effects thereof. Indeed, it was his counsel rather than Abernethy's who argued in favor of coverage before this Court. We are most sympathetic to Lowery's plight as an innocent victim of Abernethy's deplorable conduct. Nonetheless, we are constrained to conclude the policy's exclusionary clause is unambiguous under the facts of the case *sub judice* and is effective as to Lowery's claims against Abernethy.

Because the insurance policy issued by plaintiff did not provide liability coverage, we reverse the trial court's grant of partial summary judgment in favor of Lowery and remand with instruction that summary judgment be entered for plaintiff. We observe that plaintiff has also argued it should not be liable for punitive damages. As we have decided there was no liability coverage, it is unnecessary to reach the punitive damages question.

Reversed and remanded.

Judges WELLS and MARTIN concur.

Judge Wells concurred prior to 30 June 1994.