LARRY A. EUBANKS; DEBORAH A. EUBANKS; RAYMOND N. MARTIN, AND NAN WALKER HOWELL v. STATE FARM FIRE AND CASUALTY COMPANY

No. COA96-145

(Filed 17 June 1997)

## Insurance § 725 (NCI4th)— solicitation to commit murder— intentional and negligent emotional distress—no coverage by homeowner's insurance

A homeowner's policy which excluded liability for injury "expected or intended by the insured" did not provide coverage for actions against the insured for intentional and negligent infliction of emotional distress based upon the insured's hiring of a hit man to kill the plaintiffs since the insured's solicitation to commit murder was an extreme and outrageous act so nearly certain to result in emotional injury to plaintiffs that the insured's intent to inflict emotional injury may be inferred from her conduct.

**Am Jur 2d, Insurance §§ 708, 709.**

Appeal by plaintiffs from judgment entered 8 November 1995 by Judge Jerry Cash Martin in Forsyth County Superior Court. Heard in the Court of Appeals 10 October 1996.

*Morrow, Alexander, Tash & Long, by John F. Morrow, for plaintiff-appellants Larry L. Eubanks, Deborah A. Eubanks, and Raymond N. Martin.*

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Sam J. Ervin, IV, for plaintiff-appellant Nan Walker Howell.*

*Frazier, Frazier, & Mahler, by Harold C. Mahler and Torin L. Fury, for Defendant-Appellee.*

JOHN, Judge.

Plaintiffs contend the trial court erred by granting defendant's motion for summary judgment and by denying plaintiffs' like motion. Plaintiffs argue a policy of homeowner's insurance issued by defendant State Farm Fire and Casualty Company (the policy) imposed upon the latter a duty to defend and provide coverage to the named insured, plaintiff Nan Walker Howell (Howell), in civil actions brought against her by the plaintiffs Larry L. and Deborah A. Eubanks (the Eubanks) and Raymond N. Martin (Martin). We disagree.

Relevant facts and procedural history are as follows: Howell provided funds to finance custody litigation initiated by her daughter Tammy against Tammy's former husband Kevin Martin (Kevin), son of plaintiff Raymond N. Martin. Kevin was represented in the custody dispute by attorney Larry L. Eubanks (Eubanks), and Howell believed Martin was furnishing financial assistance to Kevin, thereby prolonging the custody dispute. At some point, Howell asked Dennis Rowe (Rowe), then married to Tammy, to "murder or get someone to murder Martin and Larry Eubanks." Rowe reported to Warren County Sheriff's Department Detective James N. Suggs (Suggs) that Howell wanted Martin and Eubanks "eliminated." Suggs in turn contacted the North Carolina State Bureau of Investigation (SBI). SBI special agent M.D. Wilson (Wilson) assumed the role of a "hit man" and met with Howell. At this meeting, which was surreptitiously videotaped by the SBI, Howell indicated she wanted Martin and Eubanks killed, and agreed to pay $5,000 for each murder. Howell paid Wilson $300 as a retainer for the killings.

On 15 January 1992, the Eubanks filed civil suit in Forsyth County alleging Howell formed an intent to kill Eubanks and hired a killer for that purpose, that this conduct was extreme, outrageous, and intentional, and resulted in severe emotional injury to the Eubanks. Martin filed a similar complaint against Howell on 3 February 1992.

Howell was indicted 17 February 1992 by the Davidson County Grand Jury for solicitation to commit the murders of Eubanks and

Martin. Following conviction at trial, she was sentenced 15 January 1993 to nine years imprisonment on each charge. In an unpublished opinion, this Court held no error affected Howell's trial. *See State v. Howell*, 116 N.C. App. 491, 448 S.E.2d 389 (1994), *disc. review denied*, 339 N.C. 740, 454 S.E.2d 659 (1995).

Defendant was first notified of the civil actions by Howell's criminal defense counsel in correspondence dated 11 November 1993. Counsel demanded defense and coverage under the policy regarding the civil claims against Howell. A similar demand was presented 17 November 1993 to the law firm representing defendant, followed by a further demand 10 December 1993. Defendant declined to defend Howell in plaintiffs' civil actions by letter to her criminal defense counsel dated 22 December 1993.

The Eubanks and Martin respectively amended their complaints 9 and 21 February 1994 to allege Howell intentionally *and/or negligently* inflicted emotional distress upon plaintiffs. Defendant was informed of this development by Howell's attorney in a letter dated 22 February 1994, but again declined to provide representation or coverage to Howell. On 11 April 1994, Howell entered into consent judgments awarding $50,000 to Larry A. Eubanks, $50,000 to Deborah Eubanks, and $100,000 to Martin.

On 10 June 1994 the Eubanks, Martin and Howell jointly brought the instant declaratory judgment action. Following discovery, plaintiffs and defendant each moved for summary judgment. A hearing on the motions was conducted 16 October 1995, following which the trial court granted defendant's motion and denied that of plaintiffs in an order filed 8 November 1995. Plaintiffs appeal.

The sole question for our resolution is whether the trial court erred in ruling that the policy did not provide coverage under the circumstances *sub judice* for the torts of intentional infliction of emotional distress or negligent infliction of emotional distress.

The duty of an insurance company to defend a policyholder ordinarily is based upon the facts as alleged in the pleadings. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). If the alleged acts include those both covered and excluded from coverage under the policy, the insurer must defend. *Id.* at 691, n.2, 340 S.E.2d at 377, n.2. Nonetheless,

when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

*Id.* at 691, 340 S.E.2d at 377.

In the case *sub judice*, the Eubanks and Martin alleged claims against Howell for intentional and negligent infliction of emotional distress. There being no contention by plaintiffs that defendant had "knowledge [] the facts [we]re otherwise," *id.*, than set out in plaintiffs' complaints, the issue thus is whether those complaints set forth allegations indicating the claims in question were covered under the policy. *See id.* at 691, 340 S.E.2d at 377.

Section II of the policy contained the following provisions:

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

The policy defined occurrence as "an accident, including exposure to conditions, which results, during the policy period, in . . . bodily injury." The term "accident" was not defined, but section III of the policy stated that "Personal Liability . . . do[es] not apply to bodily injury . . . which is expected or intended by the insured."

In *Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 464 S.E.2d 723 (1995), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 905, *and motion to reconsider dismissed,* 343 N.C. 309, 472 S.E.2d 334 (1996), this Court construed terms of a homeowner's policy providing coverage for an "OCCURRENCE to which this coverage applies," wherein "occurrence" was defined as

an *accident* including continuous or repeated exposure to the same conditions, which results in BODILY INJURY . . . *which the INSURED neither expected or intended to happen.*

*Id.* at 187, 464 S.E.2d at 725. We held the foregoing language excluded acts which "are so nearly certain to cause injury that intent to injure can be inferred as a matter of law." *Id.* at 188, 464 S.E.2d at 725 (citations omitted) (sexual harassment *so nearly certain to cause serious emotional injury that intent to cause such injury may be inferred as* matter of law); *see also Nationwide Mutual Ins. Co. v. Abernethy,* 115 N.C. App. 534, 540, 445 S.E.2d 618, 621 (1994) (in circumstance wherein insured admitted molestation of child but denied intent to harm, probability of mental or emotional injury resulting from insured's action so great as to allow inference of intent to inflict emotional injury); *Commercial Union Ins. Co. v. Mauldin,* 62 N.C. App. 461, 464, 303 S.E.2d 214, 216-17 (1983) (insured's admitted intent to injure wife by shooting into automobile occupied by her constituted admission of general intent to harm victim who was also a passenger in the vehicle because of high probability other passengers would be injured by insured's act, notwithstanding insured's testimony he did not intend to shoot victim).

Notwithstanding, plaintiffs attempt to distinguish our holdings in *Russ* and *Abernethy* as limited to "cases involving sexual offenses." However, we cannot fairly characterize efforts by an individual to obtain the death of another by the hiring of a paid assassin as less deplorable or outrageous, and thus less likely to result in injury or emotional distress, than the conduct considered in those opinions. Indeed, in their initial suits against Howell, each of the plaintiffs respectively complained that Howell's conduct was "outrageous and intentional behavior" such that, according to plaintiffs, Howell "knew or should have known that severe emotional distress would likely result when plaintiff[s] learned of defendant's contract to kill plaintiff[s]."

We therefore hold solicitation to commit murder is an extreme and outrageous act so nearly certain to result in emotional injury to the intended victim and spouse or parent thereof that intent to commit such injury may be inferred from the act. *See Latremore v. Latremore,* 584 A.2d 626, 632 (Me. 1990) ("In appropriate cases, 'severe' emotional distress may be inferred from the 'extreme and outrageous' nature of the defendant's conduct alone." (Citations omitted)). Accordingly, Howell's conduct in arranging to pay Wilson to murder Eubanks and Martin was an extreme and outrageous act so nearly certain to result in emotional injury to plaintiffs that Howell's intent to inflict that injury may be inferred from her conduct.

Emotional injury is an essential element of both the tort of intentional infliction of emotional distress, *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981) (elements of intentional infliction of emotional distress are "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional damage to another"), and the tort of negligent infliction of emotional distress, *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 95, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990) (elements of negligent infliction of emotional distress are "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress"). As the conduct of Howell may be inferred to have intended the emotional distress which forms an essential element of plaintiffs' claims against her, defendant was not obligated to defend Howell against those claims under the policy which expressly excluded liability for injury "expected or intended by the insured." *See Mauldin*, 62 N.C. App. at 464, 303 S.E.2d at 217 (insured who fired several shots into vehicle occupied by more than one persons "should have []" expected" likelihood of bullet striking passenger who was not his intended target and insured "obviously knew it was probable" that passenger would be struck "when he fired four of five shots" into the automobile).

Plaintiffs place great reliance upon the allegation in their amended complaint of the tort of *negligent* infliction of emotional distress, and cite to *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318 (1992). Stox is distinguishable and plaintiffs' amendments were unavailing.

In *Stox*, an elderly co-employee pushed the plaintiff, who was also elderly, on the left shoulder; Stox fell and broke her arm, the injury resulting from the fall, no injury being sustained in the pushed shoulder area. Our Supreme Court observed that the trial court

> was not required to find an intent to injure from evidence showing a mere push to the left shoulder which left no soreness or sign of injury—evidence entirely unlike the violent firing of bullets into an occupied car at close range.

*Id.* at 704, 412 S.E.2d at 323.

In their amended complaint, plaintiffs reiterated the characterization of Howell's conduct as "extreme and outrageous [] exceeding all bounds of decent conduct tolerated by society," and asserted that

"it was reasonably foreseeable [] that such extreme and outrageous conduct would cause and did cause severe and/or serious emotional distress" to plaintiffs.

Taking the facts as alleged in plaintiffs' amended complaints, *see Waste Management*, 315 N.C. at 691, 340 S.E.2d at 377, we agree with defendant that the attempted amendments are "but a different characterization of the same wilful act . . . . [They] allege[] no new facts . . . nor . . . refute the original allegations." As in their original complaints, plaintiffs' amended versions alleged expected or intended injuries unlike those of the plaintiff in *Stox* and which, as detailed above, were excluded from coverage under the policy.

As in *Abernethy*, we are aware that although our decision denies Howell coverage under the policy, it is the Eubanks and Martin who, in view of Howell's incarceration and presumed inability to satisfy personally the judgments entered against her, "likely will suffer the effects thereof." *Abernethy*, 115 N.C. App. at 540, 445 S.E.2d at 621. While sympathetic to the circumstance of the Eubanks and Martin, we conclude our holding herein is required by precedent and the policy's exclusionary clause. *See id.*

In short, the trial court's grant of summary judgment to defendant is affirmed.

Affirmed.

Judges WYNN and McGEE concur.