AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY AND LUMBER-MENS MUTUAL CASUALTY COMPANY, PLAINTIFFS v. ELIZABETH W. MORGAN, DEFENDANT

No. COA00-1359

(Filed 4 December 2001)

**Insurance— homeowners—personal catastrophe liability endorsement—duty to defend or indemnify—alienation of affections—criminal conversation**

The trial court did not err in a declaratory judgment action by holding that plaintiff insurance companies did not have a duty to defend or indemnify defendant under defendant's homeowner's or personal catastrophe liability (PCL) endorsement policies for alienation of affections and criminal conversation claims, because: (1) coverage for an accident under a homeowner's policy does not include an injury that is intentional or substantially certain to result from an intentional act, and competent evidence supports the fact that defendant engaged in intentional sexual activities with another woman's husband and that defendant intended to injure the other woman; (2) plaintiffs had no duty to defend or indemnify defendant under the 1995-96 PCL endorse-

ment policy since there was competent evidence supporting the trial court's finding of fact that the married woman's injuries did not occur during the endorsement period; and (3) plaintiffs had no duty to defend or indemnify defendant under the 1996-97 PCL endorsement policy since defendant has failed to allege any injury arising out of any of the offenses listed in the policy under personal injury, and the claims are not for bodily injury as the term is defined in the policy.

Appeal by defendant from judgment entered 24 March 2000 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 18 September 2001.

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr. and Amanda L. Fields, for plaintiffs-appellees.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jeffrey E. Oleynik, John W. Ormand, III, and S. Kyle Woosley, for defendant-appellant.*

TYSON, Judge.

Elizabeth W. Glidewell ("defendant") appeals from a declaratory judgment entered against her after a bench trial. We affirm the trial court's judgment.

## I. Facts

In October 1997, Martha Glidewell ("Martha") filed a complaint against defendant alleging alienation of affection and criminal conversation. Martha alleged that she and Powell W. Glidewell ("Pete") were married in 1967, and continued to enjoy a "relationship of love and affection" until defendant invaded their lives. Defendant, whose name was Elizabeth Wooten Morgan at that time, was alleged to have engaged in a sexual relationship with Martha's husband, Pete. According to defendant's deposition testimony, she and Pete engaged in sexual relations during December 1996. Defendant also admitted that she knew Pete was married to Martha. On 15 October 1998, defendant and Pete were married.

After defendant was served with Martha's complaint, she timely filed notice with American Manufacturers Mutual Insurance Company and Lumbermens Mutual Casualty Company (collectively "plaintiffs"). Defendant requested defense and payment of judgment, if any, from either her homeowner's policy or her personal catastro-

phe liability endorsement ("PCL Endorsement") in effect at relevant times. Plaintiffs declined to defend and subsequently brought this declaratory judgment action to determine whether they had a duty to defend or indemnify defendant for damages. The trial court entered its findings of fact, conclusions of law, and judgment on 28 April 2000. The trial court determined that plaintiffs were not obligated to defend or to indemnify defendant and denied defendant's counterclaim for breach of contract and declaratory judgment. Defendant appeals.

## II.  Issues

Defendant assigns as error the trial court's holding that the homeowner's policy and the 1995/1996 and 1996/1997 PCL Endorsements do not require plaintiffs to defend nor indemnify defendant for alienation of affection and criminal conversation claims. "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." *Allstate Ins. Co. v. Runyon Chatterton*, 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999), *disc. rev. denied*, 351 N.C. 350, 542 S.E.2d 205 (2000). "[O]n appellate review of a declaratory judgment, a trial court's findings of fact in a trial without a jury will be upheld if supported by any competent evidence." *North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 702, 412 S.E.2d 318, 322 (1992). We are "to determine whether the record contains competent evidence to support the findings; and whether the findings support the conclusions." *Nationwide Mut. Ins. Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475, *disc. rev. denied*, 303 N.C. 315, 281 S.E.2d 652 (1981). "If the trial court's findings are supported by competent evidence and, in turn, support its conclusions, the declaratory judgment must be affirmed on appeal." *Stox*, 330 N.C. at 703, 412 S.E.2d at 322. However, if the conclusions from the facts found involve legal questions, they are subject to review on appeal. *Davidson v. Duke University*, 282 N.C. 676, 712, 194 S.E.2d 761, 783 (1973).

## III.  Homeowner's Policy

Defendant argues that the "bodily injury" suffered by Martha was caused by an "occurrence" that triggered coverage.

The homeowner's policy provides that:

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

AMERICAN MFRS. MUT. INS. CO. v. MORGAN

[147 N.C. App. 438 (2001)]

1. pay up to our limit of liability for the damages for which the **insured** is legally liable and

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability. (emphasis supplied)

. . . .

The policy defines "occurrence" as follows:

5. '**occurrence**' means an accident, including exposure to conditions, which results, during the policy period, in:

a. **bodily injury**; or

b. **property damage.**

The homeowner's policy provides coverage for defending and indemnifying claims for damages caused by an "occurrence," defined as an "accident" during the policy period. The homeowner's policy does not define "accident." "Our Supreme Court has held that when the term 'accident' is not defined in an insurance policy, 'accident' includes 'injury resulting from an intentional act, *if the injury is not intentional or substantially certain to be the result of the intentional act.*'" *Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 188, 464 S.E.2d 723, 725 (1995) (emphasis in the original) (quoting *Stox*, 330 N.C. at 709, 412 S.E.2d at 325). "[A]n injury that is intentional or *substantially certain to be the result of an intentional act* is not an 'accident.'" *Id.* (emphasis in the original) (citing *Stox*, 330 N.C. at 709, 412 S.E.2d at 325). "[I]f an intentional act is either intended to cause injury or substantially certain to result in injury, it is not an occurrence under the policy definitions . . . and no coverage is provided." *Henderson v. U.S. Fidelity & Guar. Co.*, 124 N.C. App. 103, 110, 476 S.E.2d 459, 464 (1996).

In *Russ* we discussed whether the "bodily injury" complained of was covered by the policy which required that the "bodily injury" be caused by an "occurrence." The policy defined an "occurrence" as an accident but failed to define accident. After concluding that an accident does not include an injury that is intentional or substantially cer-

tain to result from an intentional act, we concluded "that since sexual harassment is substantially certain to cause injury to the person harassed, intent to injure may be inferred as a matter of law from the intent to act for the purpose of determining coverage under an insurance policy." *Russ*, 121 N.C. App. at 189, 464, S.E.2d at 725; *see also Henderson*, 124 N.C. App. at 111, 476 S.E.2d at 464 ("Notwithstanding . . . assertions that he did not intend or anticipate his misrepresentations to injure or damage plaintiffs, such purposeful and intentional acts were so substantially certain to cause injury and damage as to infer an intent to injure as a matter of law" and was not an occurrence). In *Nationwide Mut. Ins. Co. v. Abernethy*, 115 N.C. App. 534, 445 S.E.2d 618 (1994), we construed an exclusionary clause in an insurance policy, and determined that even though a predator did not intend injury by performing certain sexual acts on children, the intentional sexual acts necessarily implied intentional injury. In *Eubanks v. State Farm Fire and Cas. Co.*, 126 N.C. App. 483, 487, 485 S.E.2d 870, 872 (1997), we stated that the act of solicitation to commit murder is so certain to result in emotional injury to the intended victim, spouse, or parent that intent to commit such injury may be inferred from the solicitous act. In all these cases, the insured's intent to injure was inferred from insured's intent to act and precluded coverage under their policies.

## A. Criminal Conversation

Criminal conversation protects a spouse's interest in " 'the fundamental right of exclusive sexual intercourse between spouses, and also on the loss of consortium.' " *Sebastian v. Kluttz*, 6 N.C. App. 201, 209, 170 S.E.2d 104, 108 (1969) (quoting 42 C.J.S., Husband and Wife, § 698). In determining damages a jury "may consider the loss of companionship, loss of services, mental anguish, humiliation, and fear of sexually transmitted disease. In addition, there may be recovery for the injury to health and family honor . . . ." David A. Logan and Wayne A. Logan, *North Carolina Torts*, § 20.20 at 442 (1996) (citing *Bryant v. Carrier*, 214 N.C. 191, 198 S.E. 619 (1938); *Cottle v. Johnson*, 179 N.C. 426, 102 S.E. 769 (1920); *Gray v. Hoover*, 94 N.C. App. 724, 381 S.E.2d 472 (1989); *Sebastian*, 6 N.C. App. 201, 170 S.E.2d 104). "[T]he loss of marital rights is a species of mental distress . . . ." W. Page Keeton, *Prosser and Keeton on Torts*, § 124 at 923 (1988). " 'The plaintiff is entitled to recover for emotional distress resulting from the fact that the defendant has had sexual relations with [her husband].' " *Sebastian*, 6 N.C. App. at 218, 170 S.E.2d at 114 (quoting Restatement of Torts § 685 cmt. e).

## B. Alienation of Affection

Similarly, alienation of affection "involves a wrongful act that deprives a married person of the affection, love, society, companionship, and comfort of the spouse." *North Carolina Torts* § 20.30 at 443. The tort protects a spouse's interest in having a peaceful and uninterrupted marriage. *Sebastian*, 6 N.C. App. at 206, 170 S.E.2d at 106. " '[D]amages may include recovery for emotional distress caused by an invasion of such interests.' " *Id.* at 218, 170 S.E.2d at 114 (quoting Restatement of Torts § 690 cmt. b).

In claims for criminal conversation and alienation of affection, the law protects a spouse's interests in the exclusivity of the marital relationship, and affords an injured spouse a remedy against a third party's conduct which affects those protected interests. Our Court has held that certain intentional actions, in other contexts, may raise an inference of an intent to injure, if injury is substantially certain to follow.

Here, paragraph 1 of the trial court's conclusions of law provides that:

> To the extent any of the foregoing Findings of Fact may be deemed more properly to be Conclusions of Law, the same are incorporated herein. Likewise, to the extent that any of the following Conclusions of Law may be deemed more properly to be Findings of Fact, the same are incorporated into the above Findings of Fact.

Paragraph 16 of the trial court's findings of fact states that "The conduct engaged in by [defendant] . . . as alleged in the complaint . . . was intentional and volitional and that conduct . . . gives rise to the inference that [defendant] intended the harm alleged to have been sustained by Martha Glidewell, that is, the inference that Elizabeth Glidewell knew to a substantial certainty that Martha Glidewell would be injured . . . ."

We have carefully reviewed the entire record and conclude that competent evidence supports the fact that defendant engaged in intentional sexual activities with Pete, who was married to Martha at that time. We also conclude that this finding supports the conclusion, as a matter of law, that defendant intended to injure Martha, considering the interests protected by the torts of criminal conversation and alienation of affection. We hold that when a defendant engages in conduct that is sufficient to constitute alienation of affection or crim-

inal conversation tort actions, intent to injure the marriage and the non-consenting spouse may be inferred, as a matter of law, from such conduct when interpreting the term "accident" if the policy fails to define it.

### IV. Personal Catastrophe Liability Endorsement

Defendant argues that either the 1995-1996 or the 1996-1997 PCL Endorsement requires plaintiffs to defend and indemnify defendant in the underlying action. We disagree.

Generally an "insurer's duty to defend the insured is broader than its obligation to pay damages . . . ." *Waste Management v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Id.*; *see also Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968) (an obligation to defend becomes absolute when the allegations in the complaint bring the claim within the coverage of the policy). "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Waste Management*, 315 N.C. at 691, 340 S.E.2d at 377.

### A. 1995-1996 PCL Endorsement

Defendant argues that the 1995-1996 ("95-96") PCL Endorsement's definition of "personal injury" includes the injuries that Martha alleged, and under North Carolina's "comparison test" her allegations satisfy the coverage provisions thereby necessitating a duty to defend and indemnity by plaintiffs. *See e.g. Waste Management*, 315 N.C. at 693, 340 S.E.2d at 378.

Defendant's 95-96 PCL Endorsement provides coverage for "personal injury." The policy defines "personal injury" as:

Bodily injury, sickness, disease, death, disability, shock, mental anguish and mental injury;

False arrest, false imprisonment, wrongful entry, wrongful eviction, wrongful detention, malicious prosecution or humiliation;

Libel, slander, defamation of character, or invasion of privacy;

Assault and battery not committed or directed by a covered person.

AMERICAN MFRS. MUT. INS. CO. v. MORGAN

[147 N.C. App. 438 (2001)]

The 95-96 policy was effective from 14 November 1995 to 14 November 1996. The trial court found that "[t]he allegations in the complaint . . . establish that Martha Glidewell had no knowledge of this affair until sometime in 1997." It also found that the complaint provided no basis to determine when the alleged injuries occurred. After review of the entire record, we conclude that there was competent evidence supporting the trial court's finding of fact that Martha's injuries did not occur, and that Martha's complaint did not allege that her injuries occurred, during the 95-96 PCL Endorsement period. This finding supports the trial court's conclusion of law that plaintiffs had no duty to defend or indemnify defendant under the 95-96 PCL Endorsement policy.

Defendant also contends that the 95-96 policy remained in effect because plaintiffs never gave defendant valid notice of any reduction in coverage in the renewal of the 1996-1997 ("96-97") PCL Endorsement policy. Despite defendant's argument, we find that the record contains sufficient evidence that plaintiffs communicated valid legal notice to defendant. We hold that the defendant's alleged injury, as pled and as supported by the evidence, occurred after the expiration of the 95-96 PCL Endorsement policy, and that plaintiffs had no duty to defend or indemnify defendant under that policy.

### B. 1996-1997 PCL Endorsement

Defendant additionally contends plaintiffs had a duty to defend under the 96-97 PCL Endorsement policy arguing that Martha's complaint alleges "bodily injury" as defined by that endorsement. Defendant's 96-97 PCL Endorsement policy defines "personal injury" differently from the 95-96 policy. "Personal injury" and "bodily injury" were separated in the definition section.

'Bodily injury' means:

Bodily harm, sickness, disease, death or disability, *including shock mental anguish and mental injury arising therefrom.* (emphasis supplied)

'Personal injury' means injury arising out of one or more of the following offenses:

a) False arrest, detention or imprisonment, or malicious prosecution;

b) Libel, slander or defamation of character, or

c) Invasion of privacy, wrongful eviction or wrongful entry.

Defendant has failed to allege any injury arising out of any one of the offenses listed under "personal injury." With respect to "bodily injury," the trial court found that "Martha['s] . . . alleged humiliation, mental anguish and injuries to her feelings and her health, as alleged . . . and the claims for alienation of affection and criminal conversation . . . do not present claims for 'bodily injury' as that term is defined . . . in the [96-97 PCL Endorsement]."

A careful review of the entire record shows competent evidence to support the trial court's finding of fact. This finding supports the trial court's conclusion of law that plaintiffs had no duty to defend or indemnify under the 96-97 PCL Endorsement.

### V. Summary

We hold that plaintiffs did not have a duty to defend or indemnify defendant under defendant's homeowner's policy, or under either PCL Endorsement policies. In view of our holding, it is unnecessary to consider the parties' other arguments concerning various policy "exclusions."

The judgment of the trial court is affirmed.

Affirmed.

Judges MARTIN and WALKER concur.