JAMES PATTI, PAUL H. BAILEY, AND DRS. PATTI AND BAILEY, P.A., PLAINTIFFS-APPELLANTS v. CONTINENTAL CASUALTY COMPANY, DEFENDANT-APPELLEE

No. COA96-887

(Filed 1 July 1997)

**Insurance § 895 (NCI4th)— employment termination—general liability coverage—expected or intended damages excluded**

The trial court did not err by granting defendant insurance company's motion for summary judgment in a declaratory judgment action to determine whether there was a duty to defend or indemnify where plaintiffs had been the defendants in an action for wrongful discharge, breach of good faith and fair dealing, and intentional or reckless infliction of emotional distress arising from the termination of an office manager. The policy does not provide coverage for damages which were expected or intended by the insured; an employment termination cannot be unintentional and it may be inferred that defendants knew it was probable that plaintiff would suffer injuries since plaintiff claims her termination was wrongful.

**Am Jur 2d, Insurance §§ 703 et seq.**

Appeal by plaintiffs from order entered 2 May 1996 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 1 April 1997.

*Gordon & Nesbit, P.L.L.C., by Thomas L. Nesbit, for plaintiffs-appellants.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Michelle Rippon and Marla Adams, for defendant-appellee.*

PATTI v. CONTINENTAL CASUALTY CO.

[126 N.C. App. 643 (1997)]

WALKER, Judge.

On 24 March 1994, Debra Harrison filed suit against the plaintiffs claiming damages for wrongful discharge against public policy, breach of good faith and fair dealing, and intentional or reckless infliction of emotional distress. Each of the claims stemmed from Harrison's termination as plaintiffs' office manager.

At the time of the events giving rise to Harrison's lawsuit, plaintiffs were insured under a "Professional Insurance Coverage" policy with defendant. The policy included general liability coverage which plaintiffs contend requires defendant to provide them with a defense to the claims made by Harrison. Defendant denied coverage and refused to defend in that action. After plaintiffs settled with Harrison, they filed this action for breach of contract seeking to recover indemnification for the damages paid in the settlement and defense costs, including attorney fees. Defendant answered and filed a counterclaim for declaratory judgment seeking a declaration from the court that there was no duty to defend or indemnify plaintiffs based on the insuring agreement and its exclusions.

The trial court granted defendant's motion for summary judgment against the plaintiff professional association and plaintiff doctors individually.

Defendant's duty to defend against plaintiffs' claim is determined by the allegations found in Harrison's complaint. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374, *rehearing denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). In *Waste Management*, our Supreme Court stated:

> Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend (citations omitted).

*Id.* at 691, 340 S.E.2d at 377. Thus, we must examine the allegations in Harrison's complaint in order to determine coverage and whether there was a duty to defend under the policy.

Harrison's first claim for relief was for wrongful discharge in violation of public policy. She alleged that during her employment she was subjected to "intolerable working conditions" and was "wrongfully discharged" because she testified truthfully in an action against Bailey by his former wife. Harrison was subpoenaed to testify in her capacity as office manager and to produce certain documents of the defendant association at her deposition and later at a hearing in district court. She also testified concerning her knowledge of an adulterous affair that had taken place between Bailey and another employee, Christy Jones. As a result of the discharge, Harrison alleged she incurred substantial damages for emotional distress, medical expenses, lost earnings and benefits, and damage to her reputation. Harrison further claimed the conduct of the plaintiffs was committed "with malice, oppression, insult, rudeness, indignity or a reckless or wanton disregard" of her rights, entitling her to punitive damages.

The second claim for relief alleged in Harrison's complaint was breach of good faith and fair dealing. Here, she alleged that the implied covenant of good faith and fair dealing "prohibits an employer from terminating an employee who has been subjected by the employer to knowledge about its illicit and illegal activities," and who is then subpoenaed to testify concerning those matters. Further, she claims that during her employment she was "pressured and induced" to meet with Bailey and Jones, who provided her with information about their affair and that she was terminated because of her truthful testimony about the affair.

Lastly, Harrison sets forth a claim for relief for intentional or reckless infliction of emotional distress. Here, she alleges that by the plaintiffs' extreme and outrageous conduct they intended to inflict severe emotional distress or that their conduct was taken with knowledge or reason to believe that they would cause severe emotional distress, entitling her to compensatory and punitive damages.

The professional insurance coverage policy issued to plaintiffs contained Part I entitled GENERAL LIABILITY COVERAGE PART, COVERAGE AGREEMENTS, which provided as follows:

> We will pay all amounts, up to the limit of liability, which you become legally obligated to pay as a result of injury or damage.

We will also pay claim expenses. The injury or damage must be caused by an occurrence during the policy term. . . . We have no duty to defend any claims not covered by this Coverage Part.

Part IV of the General Liability section of the policy defines "Occurrence" as follows:

"Occurrence" means an accident, including continuous or repeated exposure to conditions which:

A. results in injury and/or damage; and

B. was not expected nor intended by you.

Part II of the policy, GENERAL LIABILITY COVERAGE PART, EXCLUSIONS, provides as follows:

We will not defend, or pay, under this Coverage Part for:

A. injury to:

1. an employee of yours arising out of and in the course of employment by you . . . .

This exclusion applies:

1. whether you may be liable as an employer or in any other capacity . . . .

This section of the policy also provides:

We will not defend, or pay, under this Coverage Part for:

. . .

L. Injury or damage you expected or intended.

Defendant alleges that the general liability coverage part of the policy did not cover Harrison's claims on two grounds: (1) The policy precludes coverage for injury to an employee arising out of and in the course of employment; and (2) The policy excludes coverage for an injury expected or intended by the insured.

Plaintiffs first allege that Harrison's injuries were not intended but were an accident. Moreover, plaintiff argues that the term "arising out of and in the course of employment by you" in the policy exclusion must be construed narrowly and as such, Harrison's injuries did not arise out of her employment with plaintiffs but rather from her personal relationship with plaintiffs.

PATTI v. CONTINENTAL CASUALTY CO.

[126 N.C. App. 643 (1997)]

We will first examine the provision in the policy that excludes coverage for damages which were expected or intended and review cases from our Court that have dealt with similar issues. In *Commercial Union Ins. Co. v. Mauldin*, 62 N.C. App. 461, 303 S.E.2d 214 (1983), the insured shot into a car occupied by his wife and killed another person who was the driver. This Court, in examining whether the insured's homeowner's policy provided coverage, observed that "[t]here is no ambiguity in the sentence '[This policy does not apply] to bodily injury or property damage which is either expected or intended from the standpoint of the insured.' The sentence obviously means that the policy is excluding from coverage bodily injury caused by the insured's intentional acts, determining whether the act is intentional from the insured's point of view." *Id.* at 463, 303 S.E.2d at 216. This Court, in upholding the trial court's granting of summary judgment for the defendant, determined that the likelihood of one of the bullets hitting the driver should have been expected by the insured and he "obviously knew it was probable that he would hit Pugh [the driver] when he fired four or five shots into her moving car." *Id.* at 464, 303 S.E.2d at 217.

In *Russ v. Great American Ins. Companies*, 121 N.C. App. 185, 464 S.E.2d 723 (1995), *disc. review denied*, 342 N.C. 896, 467 S.E.2d 905 (1996), plaintiffs claimed coverage under a business liability policy for damages arising out of claims for intentional infliction of emotional distress arising from sexual harassment. There were two liability policies in question in *Russ*. One policy provided coverage for an "occurrence" and defined the term like the policy in question in the instant case. The other policy defined "occurrence" to mean an "accident," but further excluded from coverage "bodily injury . . . expected or intended from the standpoint of the insured." The defendant denied coverage and refused to defend the claims. *Id.* at 187-89, 464 S.E.2d at 724-25.

This Court upheld the granting of summary judgment in favor of the defendant concluding that "since sexual harassment is substantially certain to cause injury to the person harassed, intent to injure may be inferred as a matter of law from the intent to act for the purpose of determining coverage under an insurance policy." *Id.* at 189, 464 S.E.2d at 725.

A similar issue was also decided in *Nationwide Mutual Ins. Co. v. Abernethy*, 115 N.C. App. 534, 445 S.E.2d 618 (1994). In *Nationwide*, this Court found that a homeowner's policy issued to

PATTI v. CONTINENTAL CASUALTY CO.

[126 N.C. App. 643 (1997)]

defendant Abernethy did not provide coverage for injuries to defendant Lowery resulting from Abernethy's alleged acts of sexual molestation of Lowery. *Id.* at 535, 445 S.E.2d at 618-19. Both parties argued that coverage depended on the interpretation of the exclusion for " 'bodily injury . . . which is expected or intended by the insured.' " *Id.* at 536, 445 S.E.2d at 619.

This Court, in deciding whether the injury to Lowery was "expected or intended," held that "because of the close relationship between an act of child sex abuse and resulting harm to the child . . . we conclude as a matter of law that Abernethy 'knew it was probable,' that his actions would cause Lowery to suffer mental and emotional injury." *Id.* at 540, 445 S.E.2d at 621 (citations omitted).

The holdings in *Mauldin, Russ* and *Nationwide* compel a similar result in the instant case. Here, the plaintiffs obviously intended to terminate Harrison. *See Lipson v. Jordache Enterprises, Inc.*, 11 Cal. Rptr. 2d 271 (1992) ("An employment termination, even if due to mistake, cannot be unintentional"). Further, Harrison claims her termination was wrongful; therefore, it "may be inferred as a matter of law" that plaintiffs knew it was probable that she would suffer injuries.

Based on the nature of the claims made by Harrison against the plaintiffs, we conclude defendant had no duty to defend and presently has no duty to indemnify the plaintiffs, as this policy does not provide coverage for damages which were expected or intended by the insured.

Furthermore, we are not persuaded by plaintiffs' argument seeking a narrow construction of the policy provision excluding coverage for injuries "arising out of and in the course of employment . . . " or that any injuries suffered by Harrison arose out of a personal relationship with plaintiffs and therefore coverage should be afforded. However, we need not address this question further in view of our decision.

The trial court did not err in granting the defendant's motion for summary judgment.

Affirmed.

Judges EAGLES and MARTIN, Mark D. concur.