KATHY SAULS LANE, as the Administrator of the Estate of SIMON CRAIG LANE, Deceased, Plaintiff v. R.N. ROUSE & COMPANY, Defendant

No. COA98-1402

(Filed 2 November 1999)

## 1. Employer and Employee— inherently dangerous activity— concrete finishing work—general contractor's duty to subcontractor's employee

In a negligence case where a subcontractor's construction foreman was doing concrete finishing work when he sustained fatal head injuries as a result of walking backwards and falling from an opening in the second floor to the first floor, the trial court did not err in refusing to find as a matter of law that concrete finishing is not inherently dangerous and that defendant-general contractor thus had no duty to decedent because: (1) the jury determined the nature of the work required a worker to walk backwards while paying close attention to the work in front of him; and (2) this work was susceptible to effective risk control through the use of adequate safety precautions.

## 2. Evidence— OSHA citations after accident—relevancy—negligence, gross negligence, punitive damages

In a negligence case where decedent-construction foreman was doing concrete finishing work when he sustained fatal head injuries as a result of walking backwards and falling from an opening in the second floor to the first floor, the trial court did not err in admitting evidence of OSHA citations against defendant-company after the accident because: (1) the citations arose from the inspection prompted by decedent's death and involved failure to comply with 29 C.F.R. § 1926.500, which addresses holes and openings in floors; (2) the evidence of the violations could be viewed as relevant to plaintiff's claims of negligence and punitive damages; and (3) a death caused by unprotected floor openings placed defendant on notice that evidence of continuing

LANE v. R.N. ROUSE & CO.

[135 N.C. App. 494 (1999)]

violations several days after the death is relevant to the questions of negligence and gross negligence.

### 3. Evidence— corrective measures after accident—control of work site—feasibility of precautionary measures

In a negligence case where decedent-construction foreman was doing concrete finishing work when he sustained fatal head injuries as a result of walking backwards and falling from an opening in the second floor to the first floor, the trial court did not err in admitting measures taken by defendant immediately following decedent's death to cover the floor openings with plywood because it was evidence of defendant's control of the work site on the day of the accident and the feasibility of taking that precautionary measure under N.C. R. Evid. 407.

Appeal by defendant from judgment entered 20 November 1997 by Judge Ernest B. Fullwood in Wayne County Superior Court. Heard in the Court of Appeals 25 August 1999.

*Patterson, Harkavy & Lawrence, L.L.P., by Martha A. Geer, and Taft Taft & Haigler, P.A., by Thomas F. Taft, Sr., for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Allan R. Gitter and Alison R. Bost, for defendant-appellant.*

HUNTER, Judge.

This case arises from the death of Simon Craig Lane ("decedent") in a construction accident occurring on 21 June 1993 in Cumberland County. Defendant, R.N. Rouse & Co., Inc. ("Rouse") appeals from the judgment based on the jury verdict in favor of decedent's estate, finding negligence by the defendant but no contributory negligence by decedent. We find no error by the trial court.

Rouse was the general contractor on the Wellman building construction project on N.C. Highway 53 East near Fayetteville, North Carolina. Bill Howell and Sons Construction, Inc., ("Howell") was one of many subcontractors working at the construction site. Decedent was a foreman with Howell.

Howell had been hired to do concrete finishing work at the Wellman site. At the time of the accident on 21 June 1993, decedent was working on the second floor, smoothing out and finishing the concrete that had just been poured. As he walked backwards, dece-

dent stepped into an opening in the floor, fell to the first floor, and sustained fatal head injuries.

The opening through which decedent fell was more than eleven feet long and nearly three feet wide. The second floor had eighteen openings of these dimensions which were created to accommodate machinery.

Following trial, the jury found: (1) that decedent was killed by the negligence of Rouse; (2) that decedent did not by his own negligence contribute to his death; and, (3) that Rouse's conduct was willful or wanton. The jury awarded $735,000.00 in compensatory damages and $2,000,000.00 in punitive damages. Compensatory damages were to be reduced by the amount of workers' compensation benefits paid to decedent's estate on behalf of his employer. Rouse appeals.

[1] Rouse first assigns error to the trial court's refusal to find as a matter of law that concrete finishing is not "inherently dangerous" and that, therefore, Rouse had no duty to the deceased.

Our Supreme Court has distinguished between "ultrahazardous activities," such as blasting, and "inherently dangerous activities." *See Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991).

> Unlike ultrahazardous activities, inherently dangerous activities are susceptible to effective risk control through the use of adequate safety precautions. The mere fact that an activity can be done safely upon compliance with such procedures does not, for purposes of establishing liability, alter its fundamental characteristic of being inherently dangerous. . . .
>
> . . .
>
> "The courts have found no universal rule of application by which they may abstractly draw a line of classification in every case between work which is inherently dangerous and that which is not. . . ."

"There is an obvious difference between committing work to a contractor to be executed, from which if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted."

One who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others:

LANE v. R.N. ROUSE & CO.

[135 N.C. App. 494 (1999)]

"The liability of the employer rests upon the ground that mischievious [sic] consequences will arise from the work to be done unless precautionary measures are adopted, and the duty to see that these precautionary measures are adopted rests upon the employer, and he cannot escape liability by entrusting this duty to another as an 'independent contractor' to perform."

The party that employs the independent contractor has a continuing responsibility to ensure that adequate safety precautions are taken.

The rule imposing liability on one who employs an independent contractor applies "whether [the activity] involves an appreciable and foreseeable danger to the workers employed or to the public generally." The employer's liability for breach of this duty "is direct and not derivative since public policy fixes him with a nondelegable duty to see that the precautions are taken."

Imposition of this nondelegable duty of safety reflects "the policy judgment that certain obligations are of such importance that employers should not be able to escape liability merely by hiring others to perform them." By holding both an employer and its independent contractor responsible for injuries that may result from inherently dangerous activities, there is a greater likelihood that the safety precautions necessary to substantially eliminate the danger will be followed.

*Woodson*, 329 N.C. at 351-53, 407 S.E.2d at 234-35 (citations omitted).

On the facts of this case, the trial court was correct in declining to conclude as a matter of law that concrete finishing was not inherently dangerous. The record before us shows that the nature of the concrete finishing work required decedent to walk backwards while performing a task requiring intense attention. The record also reflects that Rouse was aware of the floor openings and of the need to cover them for the safety of workers. A job requiring a worker to walk backwards while paying close attention to the work in front of him might well be construed to be inherently dangerous, and the jury in this case so found. It was work "susceptible to effective risk control through the use of adequate safety precautions." *Woodson*, 329 N.C. at 351, 407 S.E.2d at 234 (citation omitted). This assignment of error is without merit.

[2] Rouse also assigns error to the trial court's admission of evidence of OSHA citations against Rouse that the company received after the

LANE v. R.N. ROUSE & CO.

[135 N.C. App. 494 (1999)]

accident and that Rouse contends were unrelated to decedent's fall. The OSHA citations in question arose from the inspection prompted by decedent's death and all involved failure to comply with 29 C.F.R. § 1926.500, which addresses holes and openings in floors. The inspection took place a few days after decedent's death.

"Our court has held that, '[w]hen substantial identity of circumstances and reasonable proximity in time is shown, evidence of similar occurrences or conditions may, in negligence actions, be admitted as relevant to the issue of negligence.' " *Smith v. Pass*, 95 N.C. App. 243, 248, 382 S.E.2d 781, 785 (1989) (citation omitted). Admission of evidence is "addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown." *Sloan v. Miller Building Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997) (citation omitted).

> The decision whether to exclude evidence due to the potential for unfair prejudice, confusion, or misleading the jury is within the sound discretion of the trial court and will not be disturbed absent a showing that the ruling was so arbitrary it could not have been the result of a reasoned decision.

*McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 413-14, 466 S.E.2d 324, 333, *disc. review denied*, 343 N.C. 307, 471 S.E.2d 72 (1996) (citations omitted).

The evidence of the OSHA violations following a death could well be viewed as relevant to plaintiff's claims of negligence and, for the purpose of punitive damages, gross negligence. Plaintiff argues persuasively that a death caused by unprotected floor openings placed defendant on notice and that evidence of continuing violations several days after the death is relevant to the questions of negligence and gross negligence. Defendant has failed to show that the trial court's decision to admit the evidence was "so arbitrary it could not have been the result of a reasoned decision." *Id.*

[3] Finally, Rouse assigns error to the trial court's admission of measures taken by Rouse, immediately following decedent's death, to cover the floor openings with plywood.

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures

when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment.

N.C.R. Evid. 407. Here, Rouse argued repeatedly that it had no control of the construction site on the day of the accident. Rouse's witnesses also questioned the feasibility of covering the floor openings. However, we agree with the trial court that evidence of Rouse's actions in placing covers over the openings immediately after decedent's fall was admissible as evidence of Rouse's control of the work site on the day of the accident and of the feasibility of taking that precautionary measure.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

No error.

Judges LEWIS and MARTIN concur.